UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY MCLESKEY, ) | |
| LESLIE KAY MCLESKEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:18-cv-02797-JPH-TAB |
| ) | |
| MORRIS INVEST, ) | |
| CLAYTON MORRIS, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Larry and Leslie McLeskey bought an investment property from Morris Invest and Clayton Morris, expecting that Defendants would rehabilitate the property, find tenants, and act as a property manager. Plaintiffs hoped their investment would generate passive income through monthly rent checks. But Defendants never rehabilitated the house or found tenants, and the rent checks never came. Plaintiffs sued Defendants alleging six causes of action. Defendants have moved to dismiss all counts except one. Dkt. [44]. For the reasons stated below, Defendants' motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). In the fall of 2017, Clayton Morris contacted Larry and Leslie McLeskey through his

1

company—Morris Invest, LLC—encouraging them to buy an investment rental property through Morris Invest. Dkt. 36 ¶ 41. Morris Invest assured Plaintiffs that Defendants would find a suitable investment property, rehabilitate it, and find tenants. Id. ¶ 16. Plaintiffs would receive a "turnkey" rental property, complete with property-management services, and would immediately start receiving rent payments. Id. ¶¶ 16, 28.

Based on those assurances, Larry McLeskey and Clayton Morris signed a Purchase Agreement in which Plaintiffs purchased 866 W. 29th Street in Indianapolis ("Rental Property") from Defendants for $46,500. Id. ¶ 41; dkt 36-1. The Purchase Agreement stated that "[t]he purchase price . . . includes rehab of this property" and that the seller agreed "to rehab this property to rent ready condition." Dkt. 36-1 § 22. The Purchase Agreement "constitute[d] the sole and only agreement of the parties and supersede[d] any prior understandings or written or oral agreements between the parties." Id. § 21(I).

Plaintiffs bought the Rental Property as an investment, hoping to generate immediate income through rent payments. Dkt. 36 ¶ 34. But they did not receive any rent payments. Id. ¶ 30. Plaintiffs eventually learned that the Rental Property was vacant and not rehabilitated. Id. ¶¶ 31, 32. Unable to pay the rehab costs, Plaintiffs sold the Rental Property for $6,500. Id. ¶ 41.

Plaintiffs have sued Defendants, raising six counts: (1) Breach of Contract, (2) Promissory Estoppel, (3) Fraud, (4) Conversion, (5) Negligence, and (6) the Indiana Deceptive Consumer Sales Act. Id. ¶¶ 42–99. Defendants moved to dismiss part of Count 1 and all of Counts 2 through 6. Dkt. 44.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. Pro. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but it will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616. Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). The Court must apply Indiana law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Id.* at 482.

## III.
## Analysis

### A.    Breach of Contract (Count 1)

Plaintiffs allege that Defendants breached the Purchase Agreement by failing to (1) rehabilitate the Rental Property, (2) identify, screen, and secure tenants, and (3) fulfill their property-management obligations. Dkt. 36 ¶¶ 46–48. Defendants argue that the Purchase Agreement did not require Defendants

3

to identify, screen, and secure tenants for the Rental Property or act as a property manager, so these claims must be dismissed. Dkt. 45 at 7–8. Plaintiffs claim that Defendants assumed these obligations when they promised to provide a "turnkey" rental property. Dkt. 47 at 9.

      While the Court must accept the allegations in the complaint as true when ruling on a motion to dismiss, it need not accept allegations that are contradicted by an exhibit to the complaint. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Here, Plaintiffs' allegation that Defendants breached the Purchase Agreement by failing to screen tenants or act as property managers is contradicted by the Purchase Agreement. *See* dkt. 36-1. Nowhere in the Purchase Agreement do Defendants assume these obligations, as Plaintiffs concede. Dkt. 47 at 8. While Plaintiffs claim these obligations were encompassed in Defendants' promise to provide "turnkey" rental property, the Purchase Agreement only said the property would be rehabbed into "rent ready condition." Dkt. 36-1 § 22. "Rent ready condition" does not encompass any obligations regarding screening tenants or managing the property. *See Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) ("We begin with the plain language of the contract . . . construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole.").

      The cases cited by Plaintiffs do not create an exception or otherwise support the Plaintiffs' argument that a party can be held liable for breaching

4

obligations that are not in a contract.[1]  Therefore, Plaintiffs' allegations that Defendants failed to identify, screen, and secure tenants for the Rental Property, and failed to fulfill their property-management obligations are **DISMISSED**.  Dkt. 36 ¶¶ 47, 48.

Defendants also move to dismiss Morris Invest from the breach-of-contract claim because it did not sign the Purchase Agreement.  Dkt. 45 at 8–9.  Plaintiffs argue that Morris Invest ratified the Purchase Agreement by accepting its benefits.  Dkt. 47 at 10–12.

A principal may be bound by a contract if it subsequently ratifies the contract.  *Guideone Ins. Co. v. U.S. Water Sys. Inc.*, 950 N.E.2d 1236, 1242 (Ind. Ct. App. 2011).  "Very generally, ratification may be express, where the principal explicitly approves the contract, or implied, where the principal does not object to the contract and accepts the contract's benefits."  *Id.*  For example, in *Artmann v. Center Garage, Inc.*, the court held that Defendant ratified a contract by keeping $160,000 from a loan agreement and using it to pay its outstanding debt.  No. 2:11-cv-236-PRC, 2012 WL 5183577, at *5 (N.D. Ind. Oct. 18, 2012); *see also Indiana Ins. Co. v. Margotte*, 718 N.E.2d 1226, 1229 (Ind. Ct. App. 1999) (holding that a party ratified a contract after receiving its benefit).

---

[1] *See Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, No. 3:17-cv-035 JD, 2018 WL 3830059, at *2-3 (N.D. Ind. Aug. 13, 2018) (holding that a breach of contract claim would not be dismissed despite the fact that the attached contract was unsigned because it was possible the parties entered into another contract later); *McVay v. Store House Co.*, No. 1:16-cv-644-SEB-MJD, 2016 WL 9461331, at *3 (S.D. Ind. Oct. 24, 2016) (holding that the court would not decide if an amendment to a complaint was valid on a motion to dismiss).

Here, Plaintiffs allege that Morris Invest accepted their money in exchange for the Rental Property and retained these funds for its own benefit. Dkt. 36 ¶¶ 46, 71–72. Based on these allegations, Morris Invest may be bound by the Purchase Agreement—despite never signing it—because it accepted the Purchase Agreement's benefits. *See Guideone Ins. Co.*, 950 N.E.2d at 1242. Therefore, Defendants' motion to dismiss Morris Invest from Count 1 is **DENIED.**

### B. Promissory Estoppel (Count 2)

In support of their promissory-estoppel claim, Plaintiffs allege that Defendants violated their promises regarding the Rental Property. Dkt. 36 ¶¶ 51–56. Defendants contend that this claim must be dismissed because the parties are subject to a valid contract. Dkt. 45 at 11–12. Plaintiffs argue that their claim "may be brought in the alternative." Dkt. 47 at 18–19.

Promissory estoppel allows recovery only when "no contract in fact exists" between the parties. *Hinkel v. Sataria Distribution & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010). Therefore, if a plaintiff alleges that a defendant's promises are in a valid written contract, a promissory estoppel claim is "unwarranted surplusage" and should be dismissed. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).

While a plaintiff may plead claims in the alternative, *see* Fed. R. Civ. P. 8(d), such pleading must "use a formulation from which it can be reasonably inferred that this is what they were doing," such as "either-or" or "if-then" statements. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). In *RMA*

6

*Brokerage, LLC v. LTC Risk Management, LLC*, the court dismissed a promissory estoppel claim because the pleading did not "indicate that this theory of recovery is being pled 'in the alternative'" and the claim "specifically incorporated all of the [prior] allegations . . . including the fact that there was a contract." No. 1:06-cv-052-LJM-WTL, 2006 WL 8452395, at *4 n.4 (S.D. Ind. Aug. 2, 2006); *see also Llames v. JP Morgan Chase & Co.,* No. 11-cv-5899, 2012 WL 1032910, at *5 (N.D. Ill. Mar. 23, 2012) (dismissing unjust-enrichment claim because the party did not properly plead in the alternative by incorporating by reference prior allegations, including those alleging the existence of a contract).

Here, Plaintiffs gave no indication that they intended to plead their promissory-estoppel claim in the alternative. Count 2 does not include "in the alternative," "if-then," "either-or," or any other language suggesting Plaintiffs intended to plead it in the alternative. Dkt. 36 ¶¶ 51–56. And, as in *RMA Brokerage*, Plaintiffs explicitly incorporated the prior paragraphs, including their allegations that they "entered into a Purchase Agreement with Defendants." *Id.* ¶¶ 43, 51. Even in their brief in opposition to the motion to dismiss, Plaintiffs do not say they have pleaded this claim in the alternative—they instead say that plaintiffs "may plead claims in the alternative" and that they "have pled factual allegations sufficient to support" a promissory-estoppel claim. Dkt. 47 at 19.

While Plaintiffs were not required to include the words "in the alternative" in their Complaint, they had to include some language showing that they were

7

pleading in the alternative.  *Holman*, 211 F.3d at 407.  Plaintiffs have failed to do so here.  Therefore, Plaintiffs' promissory-estoppel claim (Count 2) is **DISMISSED.**

### C. Fraud (Count 3)

Plaintiffs allege that Defendants committed fraud by promising a myriad of services related to the Rental Property but failing to fulfill these promises. Dkt. 36 ¶¶ 58, 63.  Defendants moved to dismiss this claim, arguing in part that it is an impermissible repackaging of the breach-of-contract claim.  Dkt. 45 at 17–18.  Again, Plaintiffs argue that they may plead in the alternative. Dkt. 47 at 19.

Under Indiana law, when a contract is the source of a party's duty, "tort law should not interfere."  *French–Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008).  Therefore, a plaintiff "who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach."  *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004).  If a complaint alleges both a breach-of-contract claim and fraud claim based on the same conduct and resulting in the same injury, the fraud claim should be dismissed.  *See Sheaff Brock Inv. Advisors, LLC v. Morton*, 7 N.E.3d 278, 288 (Ind. Ct. App. 2014).

Here, in their breach-of-contract claim, Plaintiffs allege that Defendants promised that they "would sell the Rental Property to Plaintiffs, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental

Property, and provide rent checks to Plaintiffs." Dkt. 36 ¶ 43. Plaintiffs claim they were injured when they paid Defendants, but Defendants did not fulfill these obligations. *Id.* ¶¶ 46–49. In their fraud claim, Plaintiffs allege that Defendants promised they "would sell the Rental Property to Plaintiffs, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiffs." Dkt. 36 ¶ 58. When Defendants failed to carry out these promises, Plaintiffs were injured. *Id.* ¶ 63. These two allegations are based on the same conduct and allege the same injury, so the fraud claim is "merely a repackaging of [a] breach of contract claim" and must fail. *Morton*, 7 N.E.3d at 288.

Plaintiffs claim that they can "bring contract-based claims and tort-based claims related to the same underlying conduct." Dkt. 47 at 19. But that is true only if they allege that the breaching party committed the separate and independent tort of fraud and that the fraud resulted in injury distinct from that resulting from the breach of contract. *Reid*, 2017 WL 3727345, at *5. Plaintiffs have not done so here so their fraud claim must be **DISMISSED.**

### D.   Conversion (Count 4)

Plaintiffs allege that Defendants violated Indiana Code section 35-43-4-3 by converting Plaintiffs' $46,500. Dkt. 36 ¶¶ 68, 74. Defendants have moved to dismiss this claim, arguing in part that the money they allegedly converted is not a "special chattel" as required by the statute. Dkt. 45 at 19–21. Plaintiffs argue that their claim is viable because they have pleaded "the precise dollar amount" Defendants allegedly converted. Dkt. 47 at 20.

9

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind. Code §§ 35–43–4–3(a); 34-24-3-1 (allowing a civil suit for conversion). Under this statute, "[m]oney may be the subject of an action for conversion, so long as it is capable of being identified as a special chattel." *Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind. Ct. App. 2017). In order to be "special chattel" the money "must be a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Id.* A plaintiff's conversion claim fails if the money that was allegedly converted is not special chattel. *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986).

In *Kopis* for example, the defendant received a $40,000 deposit for the purchase of property. *Id.* at 1268. The money was not placed in an escrow account or given to a third party for safekeeping; instead, it was commingled with other unrelated funds. *Id.* at 1270. When the deal fell apart, the defendant refused to refund the money. *Id.* at 1269. In reversing the trial court's finding that the defendant converted the money, the court held that because the $40,000 was commingled with other funds, it ceased to be a separate, specifically identifiable chattel. *Id.* at 1270; *see also Bowden v. Agnew*, 2 N.E.3d 743, 751 (Ind. Ct. App. 2014) (holding that conversion claim failed because "[t]he money withheld was not a separate, specifically identifiable chattel").

Under the Purchase Agreement, Plaintiffs paid a "total price of $46,500 for the [Rental] Property." Dkt. 36-1 § 3. That price included the costs of

10

rehabilitating the property. *Id.* § 22. After paying the $46,500, Plaintiffs undisputedly owned the Rental Property, but Defendants never performed the promised rehab. Dkt. 36 ¶¶ 41, 53; dkt. 47 at 27. The $46,500 was a lump sum, so whatever amount was supposed to pay for the rehab was commingled with the money that paid for the purchase. Therefore, Plaintiffs have not identified a separate, specifically identifiable chattel that could support a claim of conversion.

This commingling distinguishes Plaintiffs' claim from the cases they cite because those cases involved a specific sum that was allegedly converted. *See e.g.*, *Desert Buy Palm Springs, Inc. v. DirectBuy, Inc.*, No. 2:11-cv-132 RLM, 2012 WL 2130558, at *4 (N.D. Ind. June 12, 2012).[2] And contrary to Plaintiffs' argument, dkt. 47 at 21, a court can dismiss a conversion claim on a motion to dismiss if the complaint fails to allege conversion of special chattel. *See e.g.*, *Foster v. W-Transfer, Inc.*, No. 4:11-cv-118-SEB-WGH, 2012 WL 2376188, at *4 (S.D. Ind. June 22, 2012). Because Plaintiffs have failed to identify a special chattel that Defendants allegedly converted, Plaintiffs' claim for conversion (Count 4) is **DISMISSED**.

### E.   Negligence (Count 5)

Plaintiffs allege that Defendants "owed a duty to Plaintiffs to take steps to ensure that Plaintiffs received what they purchased from Defendants and, in

---

[2] In *Dayton v. Fox Restaurant Venture, LLC*, No. 1:16-cv-2109-LJM-MJD, 2017 WL 286788, at *3–4 (S.D. Ind. Jan. 23, 2017), the court did not address whether the sum sought was a determinate sum.

failing to do so, breached their duty." Dkt. 47 at 22; dkt. 36 ¶¶ 76–83. Defendants argue that Plaintiffs' negligence claim is prohibited by the economic-loss rule. Dkt. 45 at 22. Plaintiffs argue that even under the economic-loss rule, their claim is viable because they allege that they had to sell the Rental Property at a loss. Dkt. 47 at 23–25.

Under Indiana law, "a defendant is liable to a plaintiff for the tort of negligence if (1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach." *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010). But under the "economic loss rule," a "defendant is not liable under a tort theory for any purely economic loss caused by its negligence." *Id.* at 726–27.

The economic-loss rule is based on the principle that contract law, rather than tort law, supplies the appropriate remedies for injuries that are "solely economic in nature." *Id.* at 728–730. For example, in *Indianapolis–Marion County Public Library*, the library alleged that the contractors it hired to build a parking garage acted negligently by failing to complete the job in a workmanlike manner. *Id.* at 725. The Indiana Supreme Court held that the economic-loss rule barred the claim because the library's only alleged injury was pecuniary. *Id.* at 736. The court noted that tort law was not well suited to resolve a purely commercial dispute, *id.* at 728–29, and the library had a series of contracts that could satisfactorily "establish the relative expectations of the

12

parties," *id.* at 730.

Here, Plaintiffs allege that they paid $46,500 for the Rental Property, were unable to rent it, and eventually sold it for about $6,500. Dkt. 36 ¶ 41. This is an economic loss only. While Plaintiffs claim that the Rental Property itself was damaged, dkt. 36 ¶ 82, they do not allege that Defendants' negligence caused the Rental Property to be vandalized or physically destroyed in any way. Rather, their briefing clarifies that this damage was only "the additional harm" of the Rental Property "sitting empty and neglected" until they had to "sell it at a loss." Dkt. 47 at 24. In any event, this claim only alleges damages to a product that was subject to a contractual agreement, and the economic-loss rule holds that "contract law governs damages to the product or service itself." *Indianapolis-Marion Cty. Pub. Library,* 929 N.E.2d at 728.

In essence, Plaintiffs' only injury is that rather than making money from purchasing the Rental Property, they lost a portion of the money used to make the purchase under the Purchase Agreement. This dispute is best handled by contract law, not the tort of negligence. *Id.* at 728–30. Therefore, Plaintiffs' negligence claim (Count 5) is **DISMISSED**.

  **F. The Indiana Deceptive Consumer Sales Act (Count 6).**

Plaintiffs allege that Defendants' conduct surrounding the sale of the Rental Property violated several provisions of the Indiana Deceptive Consumer Sales Act ("IDCSA"). Dkt. 38 ¶¶ 84–99. Defendants argue that the sale of the Rental Property was not a "consumer transaction" under the statute. Dkt. 45 at 22–23. Plaintiffs argue that it was. Dkt. 47 at 25–26.

The IDCSA prohibits specified deceptive acts "in connection with a consumer transaction." Ind. Code § 24-5-0.5-3. To be a "consumer transaction," the transaction must be for "purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." Ind. Code § 24-5-0.5-2(a)(1). The purpose of the statute is to simplify the law governing unconscionable consumer sales practices, protect consumers, and encourage fair consumer sales practices. Ind. Code § 24-5-0.5-1.

Typically, an individual who acts with a commercial motive is not a consumer. A consumer is "[s]omeone who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." Black's Law Dictionary, (11th Ed. 2019); *see also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *33 (D.N.J. July 29, 2015) (holding that the plaintiffs did not engage in a "consumer transaction" under the IDCSA because the transaction had a commercial purpose).

Here, Plaintiffs allege that they wanted "to invest in 'turnkey' rental properties generating immediate income," dkt. 36 ¶¶ 25, 34, 39, so they bought the Rental Property to make money. That is primarily a commercial transaction, not a consumer transaction, and therefore is not covered by the IDCSA.

Plaintiffs argue that this claim should survive based on *Watkins v. Alvey,* 549 N.E.2d 74 (Ind. Ct. App. 1990). Dkt. 47 at 25. There, the court allowed an IDCSA claim alleging that the defendants promoted an investment pyramid scheme. *Id.* at 75. That holding, however, was based on an amendment to the IDCSA that explicitly "provid[ed] remedies to individuals who lose money in a pyramid promotional scheme." *Id.* at 76. Here, Plaintiffs cite no similar statute bringing commercial transactions like theirs within the IDCSA's protections.[3] *Watkins* therefore does not help them here.

Plaintiffs also argue that their claim should survive because Defendants have not cited any authority that they do not meet the definition of "a consumer, as defined by the statute." Dkt. 47 at 25. But even if Plaintiffs met the definition of "consumer," the transaction must still meet the separate definition of a "consumer transaction." *See* Ind. Code § 24-5-0.5-3. They have not demonstrated that the transaction at issue here meets that definition. Therefore, Plaintiffs' claim under the IDCSA (Count 6) is **DISMISSED.**

## IV.
## Conclusion

Defendants' motion to dismiss the portions of the complaint, dkt. [44], is **GRANTED in part and DENIED in part**. The Court **DENIES** Defendants' motion to dismiss Morris Invest from Count 1 of the complaint. The Court

---

[3] Indeed, the Indiana General Assembly later amended the IDCSA so that pyramid schemes are no longer regulated as consumer transactions under Article 5 and instead are regulated under Article 13. *See* P.L.105-2017.

15

**GRANTS** the remaining portions of the motion; Counts 2 through 6 are **DISMISSED**.

**SO ORDERED.**

Date: 6/18/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Molly Elizabeth Harkins
HOOVER HULL TURNER LLP
mharkins@hooverhullturner.com

David J. Hensel
HOOVER HULL TURNER LLP
dhensel@hooverhullturner.com

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

James Piatt
RILEY WILLIAMS & PIATT, LLC
jpiatt@rwp-law.com