IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY AND LESLIE KAY MCLESKEY | Case No. 1:18-cv-02797-JPH-TAB |
| Plaintiffs, | |
| vs. | |
| MORRIS INVEST, LLC and CLAYTON MORRIS, | |
| Defendants | |

MORRIS INVEST, LLC and CLAYTON
MORRIS,

Third-Party Plaintiffs

vs.

OCEANPOINTE INVESTMENTS LIMITED,
INDY JAX PROPERTIES, LLC f/k/a
OCEANPOINT PROPERTIES, LLC, INDY
JAX PROPERTIES LLC, INDY JAX WEALTH
HOLDINGS, LLC f/k/a OCEANPOINT
HOLDINGS, LLC, INDY JAX WEALTH
HOLDINGS LLC, BERT WHALEN,
CHRISTOPHER NEUSER, and NATALIE
BASTIN

Third-Party Defendants

## ANSWER, AFFIRMATIVE AND OTHER DEFENSES,  AND THIRD-PARTY COMPLAINT

Defendants, Counterclaimants, and Third-Party Plaintiffs Morris Invest and Clayton Morris (the "Morris Parties"), for their Answer and Defenses to Plaintiffs Larry and Leslie Kay McLeskey's Second Amended Complaint, and for their Third-Party Complaint, state as follows:

## I.   INTRODUCTION

1.   Plaintiffs are individuals who purchased real estate through what appears to be a Ponzi scheme operated by Defendants.

**ANSWER**:   The Morris Parties admit that Plaintiffs purchased real estate, but deny the remaining allegations contained in Paragraph 1.

2.   The Plaintiffs are among the unknown number of real estate investors who have purchased, from and through Defendants, real estate to be used as investment rental properties.

**ANSWER**:   The Morris Parties admit that Plaintiffs purchased real estate to be used as an investment rental property, but deny the remaining allegations contained in Paragraph 2.

3.   Defendants pushed their "turnkey" real estate investment scheme through podcasts, YouTube videos, a website, and individual phone calls and emails. But Plaintiffs have received none of the benefits promised by Defendants.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 3.

4.   This lawsuit seeks redress from Defendants for damages for statutory violations, breach of contract, promissory estoppel, conversion, and fraud.

**ANSWER**:   The Morris Parties admit that Plaintiffs purport to seek redress from them for statutory violations, breach of contract, promissory estoppel, conversion, and fraud. The Morris Parties deny Plaintiffs are entitled to the relief they request. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel, fraud, conversion, negligence, and Indiana Deceptive Consumer Sales Act claims in their entirety, as well as portions of Plaintiffs' breach-of-contract claim. [Filing No. 59.]

5.      Plaintiffs have each damaged in an amount to be determined at trial, plus punitive damages.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 5.

## II.   THE PARTIES

### Plaintiffs

6.      The Plaintiffs in this action purchased a real estate investment property in Indianapolis from and through Defendants.

**ANSWER**:   The Morris Parties admit that Plaintiffs purchased investment real estate property in Indianapolis, but deny the remaining allegations contained in Paragraph 6.

7.      Plaintiffs were damaged by the fraud, breach of contract, violations of the Indiana Deceptive Consumer Sales Act, and other misconduct by Defendants.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 7. By way of further response, the Court dismiss Plaintiffs' promissory-estoppel, fraud, Indiana Deceptive Consumer Sales Act, negligence, and conversion claims, as well as portions of Plaintiffs' breach-of-contract claim. [Filing No. 59.]

8.      At all relevant times, Plaintiffs Larry and Leslie Kay McLeskey were residents of Adrian, Michigan and purchased a property from Defendants, which property is located in Marion County, Indiana at 866 W. 29th Street, Indianapolis, Indiana. Plaintiffs Larry and Leslie Kay McLeskey are citizens of Michigan.

> **ANSWER**:   The Morris Parties admit that Plaintiffs purchased the property located in Marion County, Indiana at 866 W. 29th Street, Indianapolis, Indiana, but deny that Plaintiffs purchased the property from the Morris Parties. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8 and, therefore, they are denied.

## Defendants

9.      Defendant Clayton Morris is a self-described real estate investor, host of *Investing in Real Estate* Podcast, and former co-host on the Fox & Friends Weekend show. Defendant Morris is a co-founder and owner of Defendant Morris Invest. Defendant Morris claims to have started Morris Invest to help individuals attain financial freedom and grow their personal wealth through passive income. Defendant Morris resides in New Jersey. Defendant Clayton Morris is liable as an individual because he participated as an individual in the conduct alleged below and because Defendant Morris Invest has been so dominated by Mr. Morris and Morris Invest's separate entity so ignored that Morris Invest primarily transacts Mr. Morris's business instead of its own and can be called Mr. Morris's alter ego, and Mr. Morris used the corporate form of Morris Invest to

commit fraud and cause injustice to Plaintiffs. Defendant Clayton Morris is a citizen of New Jersey.

> **ANSWER**:   The Morris Parties admit that (i) Clayton Morris is a real estate investor, host of *Investing in Real Estate* Podcast, and former co-host of the Fox & Friends Weekend show, (ii) Clayton Morris is a co-founder and owner of Morris Invest, and (iii) Morris Invest started Morris Invest to help individuals attain financial freedom and grow their personal wealth through passive income. The Morris Parties deny the remaining allegations contained in Paragraph 9.

10.     Defendant Morris Invest is a Delaware limited-liability company which purports to help investors buy and renovate investment properties. Morris Invest promises to fill those investment properties with paying tenants, thereby providing its investors with a "turnkey" rental property. The members of Morris Invest are two revocable trusts: The Clayton Morris Revocable Trust and The Natali Morris Revocable Trust. The Trusts beneficiaries are Clayton Morris, Natalie Morris, and their children. The trustees of the Trusts are Clayton Morris and Natalie Morris, both citizens of New Jersey, and, therefore, Morris Invest is a citizen of New Jersey.

> **ANSWER**:   The Morris Parties admit that Morris Invest is a Delaware limited-liability company, the members of Morris Invest are two revocable trusts identified in Paragraph 10, and that the trustees and beneficiaries are those identified in Paragraph 10. The Morris Parties deny the remaining allegations contained in Paragraph 10.

### III.   JURISDICTION AND VENUE

11.   This Court has original jurisdiction over this action under 28 U.S.C § 1332

because Plaintiffs and Defendants are citizens of different states and the amount in

controversy for Plaintiffs exceeds $75,000.00, exclusive of interest and costs.

> **ANSWER**:   The Morris Parties admit that Plaintiffs have demanded in excess of $75,000.00, exclusive of interest and costs, from the Morris Parties, but the Morris Parties lack knowledge or information sufficient to form a belief as to the amount in controversy, and deny that Plaintiffs are entitled to any damages from the Morris Parties. Plaintiffs' allegations contain a legal conclusion to which no response is required. To the extent a response is required, the Morris Parties deny any remaining or inconsistent allegations or legal conclusions.

12.   Morris Invest has sufficient minimum contacts with this judicial jurisdiction

to provide this Court with personal jurisdiction. Specifically, Morris Invest has had

systematic and continuous direct contact with the forum for a substantial period of time

by convincing citizens of other states to buy investment properties in Indianapolis,

Indiana. Morris Invest's activities in and related to Indianapolis, Indiana give rise to the

claims themselves.

> **ANSWER**:   The Morris Parties do not dispute this Court's exercise of personal jurisdiction. The Morris Parties deny the remaining allegations contained in Paragraph 12.

13.   Defendant Clayton Morris has sufficient minimum contacts with this

judicial district to provide this Court with personal jurisdiction. Specifically, Clayton

Morris has had systematic and continuous direct contact with the forum for a substantial

period of time by convincing citizens of other states to buy investment properties in

Indianapolis, Indiana. Clayton Morris's activities in and related to Indianapolis, Indiana give rise to the claim itself.

> **ANSWER**:   The Morris Parties do not dispute this Court's exercise of personal jurisdiction. The Morris Parties deny the remaining allegations contained in Paragraph 13.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district and because the properties at issue are located in this judicial district.

> **ANSWER**:   The Morris Parties admit the allegations contained in Paragraph 14.

### IV.   FACTUAL BACKGROUND

15.     Morris Invest lures potential investors by advocating its program through blogs, YouTube videos, and a podcast.

> **ANSWER**:   The Morris Parties admit that Morris Invest creates blogs, YouTube videos, and a podcast, but deny the remaining allegations contained in Paragraph 15.

16.     Morris Invest persuades investors to participate in its program by claiming to have been founded on a three-step wealth building plan:

> a.  Prospective investors schedule a consultation with Morris Invest, and Morris Invest has a thirty-minute phone call with the prospective investor to learn about his or her investment goals.

> b.  The prospective investor selects a property offered by Morris Invest.

c. Morris Invest handles property identification and rehabilitation, finds and secures tenants, sells the investor the property ("Rental Property") in a rent-able condition, and all the investor needs to do is to collect rent from the property provided by Morris Invest.

**ANSWER**:    The Morris Parties deny the allegations contained in Paragraph 16.

17.    These claims are false, however. Contrary to its express claims to Plaintiffs and other investors, Morris Invest and Clayton Morris are only marketers. They use affiliates to actually identify, sell, rehabilitate, locate tenants for, and manage the Rental Properties they convince their investors, including the Plaintiffs, to purchase.

**ANSWER**:    The Morris Parties deny the allegations contained in Paragraph 17.

18.    Plaintiffs were told by Defendants that Morris Invest would handle everything pertaining to the Rental Property. Plaintiffs were led to believe that they would be dealing with Defendants only.

**ANSWER**:    The Morris Parties deny the allegations contained in Paragraph 18.

19.    However, in Indiana, Defendants use or used Oceanpointe Investments Limited ("Oceanpointe"), Indy Jax Wealth Holdings, LLC, and/or Indy Jax Properties, LLC (collectively, "Indy Jax") to handle identification, sale, rehabilitation, tenant location, and property management of the Rental Properties it convinces its investors, including the Plaintiffs, to purchase.

**ANSWER**:   The Morris Parties deny that they "use or used" the entities identified in Paragraph 19 to "handle" any of the activities identified in Paragraph 19 as to any rental properties. The Morris Parties admit and/or aver that Plaintiffs purchased property from Oceanpointe Investments Limited, Indy Jax Wealth Holdings, LLC and/or Indy Jax Properties, LLC and paid Oceanpointe Investments Limited, Indy Jax Wealth Holdings, LLC and/or Indy Jax Properties, LLC to perform rehabilitation services. The Morris Parties deny the remaining allegations contained in Paragraph 19.

20.     Although Defendants now claim that they had no involvement with

Oceanpointe and the other entities listed above, that's not what they told investors:

> On Thursday, June 29, 2017, 4:25 AM, Clayton Morris <clayton@morrisinvest.com> wrote:
>
> Yes sir we have many LLC's that we use to hold our acquisitions before rehab. And that is just one of them we own.
>
> From: █████████████████
> Date: June 28, 2017 at 7:31:05 PM
> To: Clayton Morris <clayton@morrisinvest.com>
> Subject:  Re: Earlier bird
>
>
> Just wondering, are you the owner of Oceanpoint holdings as well or is that a separate company that you just work with to manage the properties that you sell to investors like me?

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 20.

21.     Defendants persuaded hundreds of investors to purchase Rental Properties

in Marion County during 2017 and 2018.

**ANSWER**:   The Morris Parties deny that they "persuaded" investors to purchase Rental Properties. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 and, therefore, they  are denied.

22.     Defendants did not evaluate whether their investors were sophisticated, accredited, or otherwise had any particular financial acumen or experience in real estate investing. Instead, they appear to have targeted inexperienced investors, many of whom ultimately lost large proportions of their savings or retirement funds in the scheme.

**ANSWER**:   The Morris Parties admit they did not perform the evaluations described in the first sentence of Paragraph 22. The Morris Parties deny the remaining allegations contained in Paragraph 22.

23.     For its part, and in accordance with its partnership with Morris Invest and Clayton Morris, Oceanpointe, Indy Jax Wealth Holdings, LLC, and/or Indy Jax Properties, LLC purchased hundreds of homes in the Indianapolis area. Many of these homes came from tax sales.

**ANSWER**:   The Morris Parties deny they had a partnership with Oceanpointe, Indy Jax Wealth Holdings, LLC, and/or Indy Jax Properties, LLC. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 and, therefore, they are denied.

24.     Unbeknownst to Plaintiffs, Morris Invest and Clayton Morris matched their clients with Oceanpointe's properties and then Oceanpointe, in addition to profiting from the sale and unbeknownst to the Plaintiffs, was tasked with rehabbing, renting, and managing the homes.

**ANSWER**:   The Morris Parties admit that Plaintiffs purchased property and services from Oceanpointe. The Morris Parties aver that Plaintiffs paid Oceanpointe for the property and services. The Morris Parties are without knowledge and information as to Oceanpointe profits.

The Morris Parties deny all remaining allegations contained in Paragraph 24.

25.    Plaintiffs purchased one single-family home, from and through Defendants, to be used as a rental property for the purpose of generating "passive" rental income to Plaintiffs.

**ANSWER**:    The Morris Parties admit that Plaintiffs purchased one single-family home but deny that the home was purchased from the Morris Parties. The Morris Parties lack knowledge and information sufficient to form a belief as to the remaining allegations contained in Paragraph 25 and, therefore, they are denied.

26.    Plaintiffs were told that the rental property purchased from and through Defendants would be rehabbed by Morris Invest using the purchase funds provided by Plaintiffs.

**ANSWER**:    The Morris Parties deny that the Plaintiffs purchased the rental property "from and through" them and that the Morris Parties were responsible for rehabbing the rental property. The Morris Parties admit that a representative of Morris Invest informed Plaintiffs that the rental property would be rehabbed using Plaintiffs' purchase funds.

27.    Plaintiffs were told that Defendants would find, screen, and secure tenants for each of the Rental Properties.

**ANSWER**:    The Morris Parties deny the allegations contained in Paragraph 27.

28.    In other words, Defendants represented to Plaintiffs that, for the money invested, Plaintiffs would receive a "turnkey" Rental Property, complete with paying tenant and property management services.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 28.

29.   Plaintiffs were told by Defendants that their Rental Property would be or had been rehabilitated using the purchase Funds.

**ANSWER**:   The Morris Parties admit the allegations contained in Paragraph 29.

30.   Plaintiffs have not received any rent checks.

**ANSWER**:   The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 and, therefore, they are denied.

31.   Plaintiffs eventually learned that their Rental Property had not been rehabilitated, as promised by Defendants and as paid for by Plaintiffs.

**ANSWER**:   The Morris Parties deny that they promised to perform rehab services, and they deny that they were paid to perform rehab services. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31 and, therefore, they are denied.

32.   Plaintiffs eventually learned that their Rental Property was not, in fact, being rented by tenants and was sitting vacant.

**ANSWER**:   The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and, therefore, they are denied.

33.   Eventually, Plaintiffs learned that it was Oceanpointe, and an entity called Blue Sky, or some other entity, that had been tasked with rehabilitating and managing the Rental Property and securing tenants.

**ANSWER**:   The Morris Parties deny that they contracted with Plaintiffs or agreed to perform the services identified in Paragraph 33 and, accordingly, deny that they "tasked" other entities to perform these services. The Morris Parties direct Plaintiffs to Plaintiffs' contracts with nonparties. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33 and, therefore, they are denied.

34.   Defendants sold Plaintiffs a "passive income" program that Defendants knew was not what it was portrayed it to be—a means for Plaintiffs to invest in "turnkey" rental properties generating immediate income.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 34.

35.   Defendants intentionally and materially misrepresented the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiffs.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 35.

36.   Defendants knew, at the time they made these misrepresentations, that their program provided none of the features or benefits it advertised.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 36.

37.   Defendants Clayton Morris and Morris Invest have denied responsibility to Plaintiffs for Plaintiffs' losses, instead pointing their fingers at Oceanpointe.

**ANSWER**:   The Morris Parties admit that they deny responsibility to Plaintiffs for Plaintiffs' alleged losses and that Oceanpointe is responsible for any losses claimed by Plaintiffs. The Morris Parties deny any remaining or inconsistent allegations contained in Paragraph 37.

38.     Defendants have been operating a Ponzi scheme in which Defendants used the purchase funds paid by new investors to send "rent" checks to earlier investors.

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 38.

39.     The Plaintiffs did not have any role in selecting or analyzing the Rental Property and now Plaintiffs owe thousands of dollars for rehabilitation work, code violations, or even tax liens. Dollars they cannot afford because they were promised "turnkey" properties after their initial investment with Defendants. This is on top of the fact that Plaintiffs paid tens of thousands of dollars for a property that is now, essentially, worthless.

**ANSWER**:     The Morris Parties deny that Plaintiffs did not have any role in selecting or analyzing the Rental Property. The Morris Parties deny that Plaintiffs made any investment with the Morris Parties or that the Morris Parties were the owners of any property purchased by Plaintiffs. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39 and, therefore, they are denied.

40.     Based upon complaints by Plaintiffs and others, the Indiana Attorney General's office opened an investigation into Defendants.

**ANSWER**:     The Morris Parties admit that the Indiana Attorney General has recently filed a lawsuit against the Morris Parties and Oceanpointe. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40 and, therefore, they are denied.

41.     In October or November, 2017, the McLeskey's were contacted by representatives of Defendants via the Morris Invest podcast, Facebook posts, emails, and

14

eventually by phone. Clayton Morris told the McLeskey's that they were offering "turnkey" properties that would be handled exclusively by Morris Invest, and that would be appraised for at least what the McLeskey's would pay for the property and rehab. On November 28, 2017, the McLeskey's, relying on these representations, purchased a recommended property at 866 W. 29th Street in Indianapolis for $46,500 (inclusive of rehab costs) using their retirement funds. After the purchase, the McLeskey's received updates from Defendants and at one point were told that the property was ready to rent and they should start receiving rental income soon. The McLeskey's only discovered the truth when they came to Indianapolis and saw that that no rehab work had actually been done. Because they could not afford to re-pay for the rehab costs, on August 15, 2018, the McLeskeys were forced to sell the property for approximately $6,500. The McLeskeys damages claim is for $120,000 (the $40,000 loss trebled), along with lost rental income.

> **ANSWER**:   The Morris Parties admit a representative(s) of Morris Invest contacted Plaintiffs through emails in November 2017. The Morris Parties lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in the first sentence and, therefore, they are denied. The Morris Parties deny the allegations contained in the second sentence. The Morris Parties admit that the McLeskeys purchased a property located at 866 W. 29th Street in Indianapolis and that the purchase price was inclusive of rehab costs but lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in the third sentence and, therefore, they are denied. The Morris Parties admit that representatives of Morris Invest provided updates to the McLeskeys but lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in the fourth sentence and, therefore, they are denied. The Morris Parties admit

that the McLeskeys informed them that they came to Indianapolis, but lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in the fifth sentence and, therefore, they are denied. The Morris Parties admit that the McLeskeys sold the property but lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in the sixth sentence and, therefore, they are denied. The Morris Parties deny that the McLeskeys are entitled to the relief they purport to seek. To the extent any allegations remain in Paragraph 41, they are denied.

## V.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS

### Count 1 – Breach of Contract

42.     Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

**ANSWER**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth herein. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

43.     Plaintiffs entered into a Purchase Agreement with Defendants providing that, for the purchase price of said Rental Property, Defendants would sell the Rental Property to Plaintiffs, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiffs.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 43. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

16

44.     The Purchase Agreement entered into by Morris Invest/Clayton Morris and

Plaintiffs is attached to this complaint as Exhibit 1.

> **ANSWER**:   The Morris Parties deny that Morris Invest/Clayton Morris entered
> into a Purchase Agreement with Plaintiffs. The Morris Parties admit
> that a Purchase Agreement is attached to the Second Amended
> Complaint as Exhibit 1. By way of further response, the Court
> dismissed Plaintiffs' breach-of-contract claim to the extent it is
> premised on the Morris Parties' failure to identify, screen, and secure
> tenants and failure to fulfill property-management obligations.
> [Filing No. 59.]

45.     Plaintiffs fulfilled their duties and responsibilities pursuant to their

Agreement with Defendants.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 45.
> By way of further response, the Court dismissed Plaintiffs' breach-
> of-contract claim to the extent it is premised on the Morris Parties'
> failure to identify, screen, and secure tenants and failure to fulfill
> property-management obligations. [Filing No. 59.]

46.     Defendants breached the Agreement with Plaintiffs by accepting the funds

from Plaintiffs intended to purchase and rehabilitate the property, then failing to

rehabilitate the property.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 46.
> By way of further response, the Court dismissed Plaintiffs' breach-
> of-contract claim to the extent it is premised on the Morris Parties'
> failure to identify, screen, and secure tenants and failure to fulfill
> property-management obligations. [Filing No. 59.]

47.      Defendants breached the Agreement with Plaintiffs by failing to identify,

screen, and secure tenants for the Rental Property.

17

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 47. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

48.    Defendants breached the Agreement with Plaintiffs by failing to fulfill their property management obligations with respect to the Rental Property.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 48. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

49.    As a result of Defendants' breach of contract, Plaintiffs suffered damages.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 49. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

50.    As a result of Defendants' breaches, Defendants are obligated to pay Plaintiffs all amounts which accrued and are owed, with interest.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 50. By way of further response, the Court dismissed Plaintiffs' breach-of-contract claim to the extent it is premised on the Morris Parties' failure to identify, screen, and secure tenants and failure to fulfill property-management obligations. [Filing No. 59.]

**Count 2 – Promissory Estoppel**

51.    Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

> **ANSWER**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth herein. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

52.     Defendants made a clear and unambiguous promise to Plaintiffs that Defendants would sell the Rental Property to Plaintiffs, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 52. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

53.     Defendants have breached that promise by failing to rehabilitate the Rental Property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 53. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

54.     Plaintiffs relied on Defendants' promises by providing funds to Defendants to purchase and rehabilitate the Rental Property.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 54. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

55.     Plaintiffs' reliance on Defendants' promises was reasonable and foreseeable.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 55. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

56.    Plaintiffs' reliance on Defendants' promises caused them harm.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 56. By way of further response, the Court dismissed Plaintiffs' promissory-estoppel claim. [Filing No. 59.]

### Count 3 – Fraud / Deception

57.    Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

> **ANSWER**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth herein. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

58.    Defendants Morris Invest and Clayton Morris knowingly and intentionally made false statements of important existing facts, namely, that Morris Invest and Clayton Morris would sell the Rental Property to Plaintiffs, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 58. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

59.    Defendants Morris Invest and Clayton Morris knew the statements were false when they made them, or they made them recklessly without knowing whether they

were true or false, because it was always Defendants' intention either to fail to perform these tasks altogether, or to farm them out to Oceanpointe and other entities.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 59. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

60.   Defendants made the false statements with the intent to obtain property, namely, the purchase Funds provided by Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 60. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

61.   Defendants Morris Invest and Clayton Morris made the statements to cause Plaintiffs to act upon them.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 61. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

62.   Plaintiffs justifiably or reasonably relied and acted upon Defendants Morris Invest's and Clayton Morris's statements.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 62. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

63.   Because neither Morris Invest nor Clayton Morris nor Oceanpointe, Indy Jax Wealth Holdings, LLC, Indy Jax Properties, LLC, or any other entity controlled by Defendants rehabilitated the Rental Property, secured tenants for the property, or performed property management services for the property, and failed to provide or

ceased providing rent payments to Plaintiffs, Plaintiffs were injured as a result of their

reasonable reliance on Defendants' statements.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 63. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

64.     Defendants' conduct is in violation of Indiana Code section 35-43-5-3.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 64. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

65.     Pursuant to the Indiana Crime Victim's Relief Act, Indiana Code section 34-

24-3 et seq., Plaintiffs are entitled to the following compensation:

> a.  An amount three times the actual damage suffered by Plaintiffs;
>
> b.  The costs of the action;
>
> c.  The costs of collection;
>
> d.  Attorney's fees.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 65. By way of further response, the Court dismissed Plaintiffs' fraud/deception claim. [Filing No. 59.]

### Count 4 – Conversion

66.     Plaintiffs incorporate the foregoing paragraphs as if set forth in their

entirety herein.

> **ANSWER**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth

herein. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

67.     Defendants knowingly or intentionally exerted unauthorized control over Plaintiffs' property for Defendants' own benefit, in exclusion and defiance of Plaintiffs' ownership rights.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 67. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

68.     Specifically, Defendants converted the funds provided by Plaintiffs to Defendants specifically and expressly for the purpose of rehabilitation of the Rental Property ("the Funds").

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 68. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

69.     The Funds were a determinate sum provided by Plaintiffs in the amount of $46,500 and are a special chattel.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 69. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

70.     Defendants were entrusted to apply the funds provided by Plaintiffs for the specific purpose of rehabilitation of the Rental Property.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 70. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

71.     Defendants received the Funds but did not use the Funds as directed by and promised to Plaintiffs. The Rental Property was not rehabilitated.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 71. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

72.     Instead of using the Funds for the purpose provided by Plaintiff, Defendants retained the Funds for their own benefit.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 72. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

73.     Plaintiffs lost the Funds as a result of Defendants' conversion of those Funds.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 73. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

74.     Defendants' conduct is in violation of Indiana Code section 35-43-4-3.

**ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 74. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

75.     Pursuant to the Indiana Crime Victim's Relief Act, Indiana Code section 34-24-3 et seq., Plaintiffs are entitled to the following compensation:

a.   An amount three times the actual damage suffered by Plaintiffs;

b.   The costs of the action;

c.   The costs of collection;

d.  Attorney's fees.

**<u>ANSWER</u>**:   The Morris Parties deny the allegations contained in Paragraph 75. By way of further response, the Court dismissed Plaintiffs' conversion claim. [Filing No. 59.]

### <u>Count 5 – Negligence</u>

76.   Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

**<u>ANSWER</u>**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth herein. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

77.   Defendants owed a duty to the Plaintiffs to properly screen, hire, retain, and supervise the company it engaged to perform the services it promised Plaintiffs.

**<u>ANSWER</u>**:   The Morris Parties deny the allegations contained in Paragraph 77. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

78.   In failing to properly screen, hire, retain, and supervise Oceanpointe and other entities, Defendants breached their duty to Plaintiffs.

**<u>ANSWER</u>**:   The Morris Parties deny the allegations contained in Paragraph 78. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

79.   Defendants owed a duty to Plaintiffs to take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and

other entities' failure to rehabilitate the Property, locate tenants for the Property, manage the Property, and perform other services promised by Defendants to Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 79. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

80.    Defendants breached their duty to Plaintiffs by failing to take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and other entities' failure to rehabilitate the Property, locate tenants for the Property, manage the Property, and perform other services promised by Defendants to Plaintiffs.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 80. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

81.    As a direct and proximate result of Defendants' above-described negligence, Plaintiffs have suffered damages.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 81. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

82.    Defendants' negligence, in failing to perform the rehabilitation on the Property and failing to secure tenants who would occupy and maintain the Property, was the proximate cause of physical damage to the Property because the Property remained empty, neglected, and unmaintained.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 82. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

83.     Plaintiffs live out of state and could not perform maintenance and could not have been aware of the damage that was occurring.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 83. By way of further response, the Court dismissed Plaintiffs' negligence claim. [Filing No. 59.]

### Count 6 – Indiana Deceptive Consumer Sales Act

84.     Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

>   **ANSWER**:   The Morris Parties incorporate by reference their responses to the prior paragraphs of the Second Amended Complaint as if set forth herein. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

85.     Each purchase and sale of a Rental Property is a "consumer transaction" within the meaning of the Indiana Deceptive Consumer Sales Act ("Act").

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 85. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

86.     Defendants are "suppliers" within the meaning of the Act in that each regularly engages in or solicits consumer transactions.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 86. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

87.     Plaintiffs are a "consumer" within the meaning of the Act.

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 87. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

88.     Plaintiffs have given notice in writing to Defendants in accordance with Ind. Code § 24-5-0.5-5(a).

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 88. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

89.     Defendants' deceptive acts described above have not been cured.

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 89. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

90.     The Defendant's actions described above are unfair, abusive, and deceptive, and constitute violations of Indiana's Deceptive Consumer Sales Act.

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 90. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

91.     Defendants intentionally and materially misrepresented to Plaintiffs the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiffs.

**ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 91. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

92.     Defendants caused Plaintiffs to believe that they were purchasing a "turnkey" investment product, along with Defendants' services in rehabilitating the properties, securing tenants, and managing the properties.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 92. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

93.     Defendants behaved deceptively in selling to Plaintiffs the rehabilitation of their properties, screening and securing of tenants, and management of the properties.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 93. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

94.     The acts, practices, misrepresentations and omissions by Defendants described above, occurring in the course of conduct involving trade or commerce, were not made in good faith and constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of the Indiana Deceptive Consumer Sales Act.

>   **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 94. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

95.     The acts, practices, misrepresentations and omissions by Defendants described above are incurable deceptive acts under I.C. 24-5-0.5-2(a)(8), done by Defendants as part of a scheme, artifice, or device with an intent to defraud or mislead.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 95. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

96.    Plaintiffs reasonably relied on the acts, practices, misrepresentations and omissions by Defendants described above.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 96. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

97.    Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived or damaged Plaintiffs in connection with the sale and purchase of the Rental Property.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 97. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

98.    Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods whether or not a person has in fact been misled, deceived or damaged in violation of Indiana's Deceptive Consumer Sales Act.

> **ANSWER**:   The Morris Parties deny the allegations contained in Paragraph 98. By way of further response, the Court dismissed Plaintiffs' Indiana Deceptive Consumer Sales Act claim. [Filing No. 59.]

99.     Plaintiffs seek monetary damages, treble damages and such other and

further relief as set forth in Indiana's Deceptive Consumer Sales Act.

> **ANSWER**:     The Morris Parties deny the allegations contained in Paragraph 99.
> By way of further response, the Court dismissed Plaintiffs' Indiana
> Deceptive Consumer Sales Act claim. [Filing No. 59.]

## AFFIRMATIVE AND OTHER DEFENSES

1.      Plaintiffs have failed to state a claim upon which relief can be granted against the Morris Parties.

2.      Plaintiffs' claims are barred by the doctrines of waiver, estoppel, and/or unclean hands.

3.      Plaintiffs' claims are barred because they have failed to join one or more individuals and/or entities who are necessary parties to the lawsuit.

4.      Plaintiffs' claims are barred due to a lack of contractual privity with the Morris Parties.

5.      Plaintiffs' claims are barred, in whole or in part, due to their own material breaches of the contracts they seek to enforce.

6.      Plaintiffs' claims are barred, in whole or in part, because and to the extent that their injuries were caused by their own negligence or other wrongdoing

7.      Plaintiffs' claims are barred, in whole or in part, because and to the extent that they failed to mitigate their damages.

8.      Plaintiffs' claims are barred under the applicable statute of limitations and/or doctrine of laches.

9.      Plaintiffs' claims are barred because Clayton Morris acted as an agent for Oceanpoint Holdings LLC when signing the Purchase Agreement. Plaintiff had notice,

knew, had reason to know, and/or should have known of the principal's existence prior to their purchase.

10.     As discovery and investigation is ongoing, the Morris Parties reserve the right to supplement these Defenses as further information becomes known.

WHEREFORE, the Morris Parties respectfully request the Court deny the relief requested by Plaintiffs; that Plaintiffs take nothing by way of their Second Amended Complaint; that the Court enter judgment in the Morris Parties' favor and against Plaintiffs; that the Morris Parties be awarded all reasonable attorney fees and court costs that they might incur in defense of Plaintiffs' claims; and for all relief just and proper in the premises.

33

## <u>THIRD-PARTY COMPLAINT</u>

Defendants / Third-Party Plaintiffs Morris Invest, LLC and Clayton Morris (collectively, the "Morris Parties"), for their Third-Party Complaint against Oceanpointe Investments Limited, Indy Jax Properties, LLC f/k/a Oceanpoint Properties, LLC, Indy Jax Properties LLC, Indy Jax Wealth Holdings, LLC f/k/a Oceanpoint Holdings, LLC, Indy Jax Wealth Holdings LLC, Bert Whalen, Christopher Neuser, and Natalie Bastin (collectively, the "Third-Party Defendants"), state:

1.      The Morris Parties incorporate by reference their answers to Paragraphs 1 through 99 of Plaintiffs' Second Amended Complaint and affirmative and other defenses as though fully set forth herein.

2.      Third-Party Defendant Oceanpointe Investments Limited ("Oceanpointe") is an Indiana corporation with a principal place of business and/or registered agent located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.

3.      Third-Party Defendant Indy Jax Properties, LLC is a Michigan limited liability company that maintains a principal place of business and/or registered agent at 2226 Berrien Hills Court, Benton Harbor, MI 49022. Indy Jax Properties, LLC also maintains a place of business at 11715 Fox Road Suite 400-107, Indianapolis, IN 46236. Prior to January 4, 2018, Indy Jax Properties, LLC's legal name was Oceanpoint Properties, LLC. Christopher Neuser, a citizen of Michigan, is the member/owner of Indy Jax Properties, LLC.

4.      Third-Party Defendant Indy Jax Properties LLC is an Indiana limited liability company created on September 4, 2018, that maintains a principal place of business and/or registered agent at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236. Indy Jax Properties LLC is a mere continuation, successor, and/or alter ego of Indy Jax Properties, LLC. Christopher Neuser is the member/owner of Indy Jax Properties LLC.

5.      Third-Party Defendant Indy Jax Wealth Holdings, LLC is a Michigan limited liability company that maintains a principal place of business and/or registered agent at 2226 Berrien Hills Court, Benton Harbor, MI 49022. Indy Jax Wealth Holdings, LLC also maintains a place of business at 11715 Fox Road Suite 400-107, Indianapolis, IN 46236. Prior to January 3, 2018, Indy Jax Wealth Holdings, LLC's legal name was Oceanpoint Holdings, LLC. Christopher Neuser is the member/owner of Indy Jax Wealth Holdings, LLC.

6.      Third-Party Defendant Indy Jax Wealth Holdings LLC is an Indiana limited liability company created on September 4, 2018, that maintains a principal place of business and/or registered agent at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236. Indy Jax Wealth Holdings LLC is a mere continuation, successor, and/or alter ego of Indy Jax Wealth Holdings, LLC. Christopher Neuser is the member/owner of Indy Jax Wealth Holdings LLC.

7.      Oceanpointe Investments Limited, Indy Jax Properties, LLC (formerly Oceanpoint Properties, LLC), and Indy Jax Wealth Holdings, LLC (formerly Oceanpoint

Holdings, LLC) are collectively referred to herein as the "Selling Entities." Indy Jax Properties LLC and Indy Jax Wealth Holdings LLC are collectively referred to herein as the "Successor Entities."

8.      Third-Party Defendant Bert Whalen ("Whalen") is a citizen of the state of Indiana and a member, owner/operator, authorized agent, and/or representative of the Selling Entities and/or Successor Entities.

9.      Third-Party Defendant Christopher Neuser is a citizen of the state of Michigan and a member, owner/operator, authorized agent, and/or representative of the Selling Entities and/or Successor Entities.

10.     Third-Party Defendant Natalie Bastin ("Bastin") is a citizen of the state of Indiana and a member, owner/operator, authorized agent, and/or representative of the Selling Entities and/or Successor Entities.

11.     The Selling Entities are all owned and/or controlled by Whalen, Bastin, and/or Neuser. Upon information and belief, the Selling Entities were at all relevant times under the manipulation and control of Whalen, Bastin and/or Neuser.

12.     Upon information and belief, at all times relevant to the allegations pled in this Third-Party Complaint, Whalen, Bastin and Neuser comingled assets and affairs with the Selling Entities, and so ignored, controlled, and manipulated the corporate form such that the Selling Entities are mere instrumentalities of Whalen, Bastin, and Neuser, and are alter egos of one another and of Whalen, Bastin and Neuser.

13. Upon information and belief, the Successor Entities are mere continuations, successors and/or alter egos of the Selling Entities, are also founded and/or subject to the manipulation and control of Whalen, Bastin, and Neuser, and are also alter egos of the Selling Entities, one another, and of Whalen, Bastin and Neuser.

14. The Morris Parties bring this action for indemnification against the Third-Party Defendants to require the Third-Party Defendants to fulfill their common-law indemnification obligations and contractual indemnification obligations.

15. On November 3, 2017, Morris Invest and Oceanpointe entered into a Mutual Finder and Real Estate Services Agreement (the "Agreement").

16. Pursuant to Paragraph 11(a) of the Agreement, Oceanpointe is required to "indemnify and hold harmless [Morris Invest], its affiliates, and its officers, directors, agents and employees from any and all claims, demands, losses, causes of action, damage, lawsuits, judgments, including attorneys' fees and costs, arising out of, or relating to [Oceanpointe's] activities under" the Agreement.

17. The Selling Entities are companies which purchased, owned, and held various real estate properties in the Indianapolis area.

18. Mr. Morris has served as the authorized agent in transactions for Oceanpointe-related entities, including but not limited to, the Selling Entities.

19. Mr. Morris acted in said agency capacity when signing purchase agreements for properties Plaintiffs purchased from Oceanpoint Holdings LLC. Plaintiffs

37

purchased the title to property and services related to the rehabilitation of the property from Oceanpoint Holdings LLC.

20.    Any claims, demands, losses, causes of actions, and damages that Plaintiffs have alleged are the direct and proximate result of the conduct and contractual breaches of the Third-Party Defendants and/or Oceanpoint Holdings LLC and/or arise out of or relate to Oceanpointe's activities under the Agreement.

21.    The Morris Parties deny that they are legally responsible for the events giving rise to Plaintiffs' causes of action, or for the damages allegedly sustained by Plaintiffs.

22.    In the event that the Morris Parties are held liable to Plaintiffs for any damages, their liability would be passive and secondary and as a result of activites undertaken in an agency capacity. As a result, the Morris Parties are entitled to common-law indemnity from Oceanpointe, Third-Party Defendants, and Oceanpoint Holdings LLC including all attorneys' fees and expenses incurred in defending themselves.

23.    In the event that the Morris Parties are held liable to Plaintiffs for any damages, the Morris Parties are entitled to contractual indemnity from Oceanpointe, the Third-Party Defendants, and Oceanpoint Holdings LLC including all attorneys' fees and expenses incurred in defending themselves.

24.    If the Morris Parties are found to be liable for any portion of Plaintiffs' alleged damages in this matter, the Morris Parties are entitled to common law

indemnification and/or contribution from Oceanpoint Holdings LLC, Oceanpointe, and the Third-Party Defendants, including all attorneys' fees and expenses incurred in defending themselves.

WHEREFORE, the Morris Parties request judgment as follows:

a. Requiring Third-Party Defendants to indemnify the Morris Parties for any judgment entered against the Morris Parties in this case;

b. Requiring Third-Party Defendants to reimburse the Morris Parties for any amount the Morris Parties must pay to Plaintiffs by way of judgment and/or settlement;

c. Awarding attorneys' fees and costs;

d. Awarding any pre- and/or post-judgment interest; and

e. For any such other and further relief to which the Morris Parties may show themselves to be entitled.

Respectfully submitted,

/s/ David J. Hensel
David J. Hensel, #15455-49
Amanda L.B. Mulroony, #30051-49
Molly E. Harkins, #35247-49
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
PO Box 44989
Indianapolis, IN 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234
dhensel@hooverhullturner.com
amulroony@hooverhullturner.com
mharkins@hooverhullturener.com

*Counsel for Defendants Morris Invest and Clayton Morris*